SAMUEL BUBIER *versus* JOHN BUBIER.

This Court has power under the revised statutes (c. 96, § 10) to hear and determine, as a court of equity, " all suits to compel the specific performance of contracts in writing," " when the parties have not a plain and adequate remedy at law." But under this provision the court must see not only that the contract is in writing, but that it is in force as such. If merged in a judgment, it would no longer be a contract in writing within the purview of the statute.

It should appear, also, that the plaintiff had not a plain and adequate remedy at law. If he has a judgment in his favor upon the contract in a court of law, he must be regarded as having there a plain and adequate remedy upon it.

And if the contract be in reference to the personalty, and not to the realty, it is, with a few exceptions of a peculiar character, considered that a party has his appropriate remedy at law; and will not be entitled to the aid of a court of equity to enforce the performance of it.

As a court of equity, with its limited equity powers, this court cannot aid a court of law to carry into effect a proceeding pending before it, or a judgment which it may have rendered.

Where the parties to an action on a mortgage of real estate, pending in the District Court, made an agreement in writing to refer that action and also all other demands between them, including claims by each against the other for the payment of money, by rule of court, to the determination of three persons named, agreeing to perform their award; and the arbitrators, acting under the rule, made their award, that one party should convey to the other the mortgaged premises, on the performance of certain conditions, and that the other party should pay certain sums of money at certain times, and give certain security therefor, and that certain personal property should be divided between them; and this report, or award, was returned into court and there accepted; and the party to whom the conveyance was to be made brought his bill in equity, claiming a specific performance of the award; *it was held,* that the bill could not be sustained.

THIS was a bill in equity, and came before the Court on bill, answer and proof.

An action on a mortgage was pending in the Middle District Court for the County of Lincoln, in favor of Samuel Bubier against John Bubier, the parties to the present bill, and at the August Term, 1842, they entered into a written agreement of reference, signed by the parties, in these terms.

" Whereas Samuel Bubier, on the 17th day of April, 1838, conveyed a farm to said John, and received back from him a mortgage deed to secure the performance of certain conditions

therein specified; and it has now become desirable to both parties that said conveyance and mortgage should be rescinded, and said Samuel restored to the title he before had, if it can be done upon fair and equitable terms and compensations.

"And whereas said John claims that upon giving back a release of the farm, there ought in fairness and equity to be paid to him a compensation for labor and services done and improvements and buildings made upon said farm, and for moneys, articles and supplies furnished by him to said Samuel. And on the other hand the said Samuel claims that said John should make him compensation for delinquencies of said John in not performing the conditions of said mortgage, and for stock, farming tools, and other articles belonging to him, which he says said John has wrongfully disposed of.

"Now therefore it is agreed, that the action aforesaid, brought upon said mortgage, be referred to E. E., S. P. and J. M. F, who, or a major part of whom, after due hearing had, shall arbitrate and award finally upon said claims, and decide what sum or sums shall be paid, and by whom paid, in full satisfaction for said claims and reconveyance, and in what manner the sum or sums, so awarded, shall be received. And said parties agree with each other, that they will perform said award, and make the payments, and give the securities, as said award may require.

"And it is agreed, that when the payments and securities so required shall be made, the said John shall make, execute and deliver to said Samuel a quitclaim deed in fee of said farm, with the usual covenants contained in quitclaim deeds, and peaceably surrender up the possession thereof, at such time as the said referees shall in their award direct."

On Dec. 16, 1842, the parties agreed, that the submission should be so extended as to embrace all demands between the parties, and that the referees should determine and report thereon as justice and equity should require. Schedules of these demands were annexed to the submission.

This agreement was filed in Court, and a rule of Court issued, whereon the referees made and signed their award and determination, as follows.

"Lewiston, December 17, 1842. Pursuant to the foregoing submission, we the arbitrators therein named, after due notice to both parties, have met them and their counsel, and have heard their several statements, pleas and evidence concerning the premises, and maturely considered the same, and more particularly the several items described in the annexed schedule A, exhibited to us on the part of the said Samuel Bubier, the plaintiff, and in the annexed schedule B, exhibited on the part of the said defendant, John Bubier; and have determined and awarded, and do determine and award, that the said John Bubier within thirty days after the acceptance of this report by the Court, do make and execute and deliver to said Samuel a quitclaim deed in fee of the farm with the buildings, improvements and all appurtenances referred to in the said rule with the usual covenants contained in quitclaim deeds, and that, provided the security hereinafter required shall previously be given on the part of the said Samuel, he shall peaceably surrender up the possession of the same on or before the fifteenth day of April next to the said Samuel.

" And on the other part we determine and award that the said Samuel Bubier shall pay on demand the following sums, or at his election give security to pay the same sums as follows, viz.

" Seventy-five dollars in one year from April 15, 1843, and one hundred and eighteen dollars and eight cents in two years from the same date, each with interest from the said date; and that for such of the said payments as are to be paid at a future day or days, that the said Samuel shall give his promissory notes to the said John for the same payable with interest from and after the fifteenth day of April, A. D. 1843, and that as collateral to the said notes, he be required to give a good and sufficient mortgage in fee of the premises above referred to for the payments aforesaid, with an agreement contained therein, that the said Samuel shall retain possession of the premises till breach of the condition of the said mortgage; said mortgage to be dated and executed at the same time or times as the deed above required on the other part. If the quitclaim deed

above required from the said John to the said Samuel should not be executed by the wife of the said John, as relinquishing her contingent right of dower, we further award that the sum of one hundred dollars be deducted from the last payment to be made as aforesaid, if the said wife shall be living at the time fixed for payment; and that the last mentioned note shall be so expressed as to provide for the same condition.

If it should so happen, that this report should not be accepted by the Court until after the said fifteenth day of April, we further determine that the delivery of possession of the premises and the execution of the conveyances and notes above referred to shall be made and performed within thirty days after such acceptance by the Court.

And we further determine that the farm referred to shall remain in the respective occupation of both parties, as it has been held or occupied since the commencement of this suit; and that the stock, farming tools and other articles remain upon the premises for the use of the parties until the said fifteenth day of April next, and that the hay be reserved for the maintenance of the stock thereon under the care of the said John, and that on the surrender of the premises, pursuant to the foregoing provisions, that whatever hay may then remain shall be equally divided, and that the following articles of property shall then absolutely remain the property of the said John, viz., A wagon, recently bought by the said John, one axe, one hoe and one shovel, carried to the said place by the said John in 1838, two three year old steers, two cows, two yearlings and one swine with the horse and sheep; and the following shall become absolutely the property of the said Samuel, viz., the cow and heifer, commonly called the said Samuel's cow and heifer, and the calf and one swine together with the cart and wheels, plough, harrow, chains, yokes and irons and all other farming utensils. The larger of the two swine to be assigned to the said Samuel, as his. The balance due on the note to Nathan Reynolds for $65,19, ($38 already paid,) is to be paid by the said John Bubier. The foregoing

to be in full of the several claims submitted to us under the said rule.

"We finally award that the said Samuel recover against the said John, twenty-three dollars and ninety-five cents, being one half of the costs of this reference ; and that no costs of Court be taxed for either party except such costs as the Court in their discretion may assess upon either party as having accrued after the approaching December Term of this Court, and that the said costs of reference be included in whatever execution or process the Court may order for enforcing this award, unless previously paid."

This report was returned into Court, and there accepted.

The facts sufficiently appear in the opinion of the Court.

The case was fully argued by

*J. O. L. Foster*, for the plaintiff ; and by

*S. Moody*, for the defendant.

The counsel for the plaintiff made the following points : —

The plaintiff has a good award in his favor, unimpeached, and unimpeachable.    3 Taunt. 486 ; 12 Mass. R. 47 ; 18 Ves. 447.

This Court has power under its equity jurisdiction to compel its specific performance.    The plaintiff has no adequate remedy at law. The parties mutually agreed that they would perform the award, and this Court has power to compel them to perform their written agreement so to do.    Rev. St. c. 96, § 10 ; *Jones* v. *Boston Mill Corp.* 4 Pick 507 ; *Clark* v. *Flint*, 22 Pick. 231 ; *McNear* v. *Bailey*, 18 Maine R. 251.

The plaintiff has done, and offered to do, all that was required on his part, to entitle him to the relief this Court has power to afford him.    He therefore expects that this Court will decree a specific performance of the award in his favor.

The counsel for the defendant took these among other grounds of objection to the maintenance of the bill.

As the Court has not general jurisdiction in equity, the plaintiff must make it appear affirmatively, on the face of his bill, that his case is within the jurisdiction of the Court.    This has

not been done. 12 Pick. 34; 18 Maine R. 204. If the plaintiff has any cause of action, it is at law.

Applications for relief in equity in this Court are in all cases applications to the discretion of the Court. 4 Pick. 507. The Court cannot decree a specific performance in this case in the just exercise of that power, for several reasons. Among them are : — that the referees exceeded their authority in several particulars. These were pointed out, and commented upon.

Nor has the plaintiff performed the award on his own part, and on that account cannot call upon the defendant for a specific performance of what he was directed to do.

The opinion of the Court was drawn up by

WHITMAN C. J. — This Court has power, under the Rev. Stat. (c. 96, § 10) to hear and determine, as a court of equity, " all suits to compel the specific performance of contracts in writing," " when the parties have not a plain and adequate remedy at law." In cases presented to us under this provision we must see, that the contract is in writing, and in force as such. If merged in a judgment it would no longer be a contract in writing, within the purview of the statute. It should appear, also, that the plaintiff had not a plain and adequate remedy at law. If he has a judgment in his favor, upon the contract in a court of law, he must be regarded as having a plain and adequate remedy upon it. And if the contract be in reference to the personalty, and not to the realty, it is with a few exceptions of a peculiar character, considered that a party has his appropriate remedy at law; and will not be entitled to the aid of a court of equity to enforce the performance of it.

The case here presented has a complication of difficulties. The contract relied upon has reference to both real and personal estate. It originated under, and in connection with, proceedings in a court of law; in a writ of entry upon a title by mortgage; and an agreement to refer that action, by rule of Court, and sundry other matters in controversy between the parties, to arbitrators, who made their award or report to the

Court, from which the rule had issued. The Court accepted it; but it is alleged declined to enter up judgment upon it. If the report was such that it could be accepted it is not easy to perceive why judgment should not have been entered up according to it. If it was such that judgment could not have been entered upon it, it is equally incomprehensible, that it should have been accepted. It is this award that the plaintiff seeks to have enforced, upon the ground that it is the result of an agreement in writing, or the terms of an agreement in writing ascertained by an award.

Some doubt has been entertained, whether a court of equity could be resorted to for the purpose of having an award of arbitrators carried into effect; but latterly this doubt seems to have been overcome, so far as it respects awards for the conveyance of real estate. *Jones* v. *Boston Mill Corporation*, 4 Pick. 507. It is believed that no decision has gone further than this. The award in the case before us goes further and embraces various other matters, all connected with the conveyance of real estate, so that we could not decree that it should be conveyed, without, at the same time, decreeing the performance of other extraneous matters. Under such circumstances, if there were no other difficulties in the way, we might well be expected to hesitate to proceed in the case.

But the plaintiff has sought his remedy at law; and has there proceeded till he had become apparently entitled to judgment in his favor. The report of the referees, under the rule of Court, having been accepted at his instigation, has placed him in this predicament. If he has been unfortunate in this particular it was of his own seeking. A court of equity cannot be required to step in and relieve him. In *Bateman* v. *Willoe*, 1 Schoales & Lefroy, 201, it was remarked by the chancellor, that "the inattention of parties, in a court of law, can scarcely be made a subject for a court of equity." And it has often been decided, that courts of equity cannot revise the doings of a court of law, unless they were procured by fraudulent practices. If new matter before unknown to a party has arisen, essentially varying the case as it stood at the

time of the decision at law, equity might afford relief, if its jurisdiction were general, or if it were specially conferred by statute, which is not the case in this State. And courts of general equity jurisdiction may afford relief in some cases in which a court of law is incompetent to do it. But this also is a power not conferred by our statutes, where a court of common law has already taken cognizance of the case. For a court of equity to be called upon to aid a court of law to carry into effect a proceeding pending before it, is believed to be unprecedented; and equally so to carry into effect a judgment which it may have rendered. And for this Court, with its limited equity powers, to do either would be clearly unwarranted.

If the agreement and award under a rule of Court have gone into judgment, as we should presume had been, or would be the case in this instance, there having been an acceptance of the report, there would be no longer an agreement in writing to be enforced; for both the agreement and award would be merged in the judgment. No action thereafter at law would lie, either upon the agreement or the award. The judgment would have become the security to be relied upon, and our equity powers, as we have seen, would not authorize us to carry it into effect.

Other difficulties, in the way of the right of the plaintiff to recover, still remain to be considered. If we were authorized to consider the case as exhibiting a simple arbitration and award, and could become satisfied of our power to enforce it, we could not proceed to do so until we had ascertained, that the award was at all points exactly in pursuance of the agreement. The first and principal item in the agreement to refer was the action then pending. Nothing is said about that in the award. Whether it was considered that the plaintiff had or had not a right to recover in that action, does not appear. Again; on looking into the agreement between the parties, it appears that they entered into certain obligations expressly to be performed in a certain event. The referees were to ascer-

tain any balance due, upon an adjustment of all demands between them, from the one party to the other; and prescribe the security to be given therefor. It was not agreed that they should award, that either party should make a conveyance of the real estate to the other, nor that they should determine when, or on what terms, any such conveyance should be made. As to both of these particulars the parties had expressly agreed between themselves; and to this effect, that "when the payments and securities so required shall be made, the said John shall make and execute a quitclaim deed in fee of said farm." The payments, or securities therefor, were to be first made; and then it was, and not till then, that the defendant was to make his deed. The arbitrators have proceeded to award "that the said John Bubier, within thirty days after the acceptance of this report by the Court, do make a quitclaim deed of the farm," &c. and then they proceed to award, that, "provided the security hereinafter required shall be given on the part of the said Samuel, he (the said John) shall peaceably surrender up the possession of the same (farm,) on or before the fifteenth day of April next, to the said Samuel." In the agreement the defendant had agreed to convey, the securities having been first made, without other specification of time. In the award the referees undertake to prescribe, that the deed shall be made at a specified time, without any reference to whether the securities had been made or not; thus varying the terms expressly agreed upon by the parties; and without power delegated to them so to do. No payment has ever been made, or securities given by the said Samuel, or any tender made of either. He has not, therefore, placed himself in a condition to demand a conveyance of the farm. The postscript to the agreement to refer, in which it is said, that all demands were referred, had reference doubtless to the conflicting claims set forth in the recital to the agreement, and cannot be construed to control the express stipulations between the parties, contained in the same agreement, as to what should be done in a certain event.

Bubier *v.* Bubier.

Viewing this case in every aspect in which it has been presented to us, we are unable to come to the conclusion, that it would be in conformity to the rules incident to equity jurisprudence, that we should afford the relief sought for.

*Bill dismissed.*